IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTOPHER CHURCHILL & | : | CIVIL ACTION |
| LUIS ROLANDO | : | |
| *On behalf of themselves and* | : | No.  10-6911 |
| *all others similarly situated* | : | |
| | : | |
| v. | : | |
| | : | |
| CIGNA CORPORATION, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                    **August 21, 2012**

Having previously certified a portion of a class proposed by Plaintiffs in this action, this

Court is now being asked by Plaintiffs Kristopher Churchill and Luis Rolando to expand the class

definition to add Rolando as a representative for an additional subclass of individuals who received

insurance from, or whose benefit plans were administered by, Defendant CIGNA Corporation or its

subsidiaries (collectively, CIGNA),[1] and who were harmed by CIGNA's policy of denying benefits

for certain types of treatment for Autism Spectrum Disorder (autism or ASD).  This proposed

subclass consists of current CIGNA plan participants whose claims for Applied Behavior Analysis

(ABA) or Early Intensive Behavioral Treatment (EIBT)[2] were denied by CIGNA on the grounds that

---

[1] In some instances, CIGNA insured plan participants directly; in other cases, including those of
Churchill and Rolando, CIGNA simply administered and/or processed (but did not fund) plan
benefits.  In all instances, CIGNA's Medical Coverage Policy applied to the class members.  This
Court will thus refer to class members and potential class members as plan participants or members,
and will refer to CIGNA's role with respect to these participants as that of administrator.

[2] Because EIBT, like ABA, is an example of an intensive behavioral intervention, both types of
treatment shall be called ABA for the purpose of this opinion.  *See* Pls.' Reply in Supp. of Mot. to
Amend Class Definition Ex. 1, at 1 (CIGNA Medical Coverage Policy, Number 0499, effective date
12/15/10) (noting, at times, the term EIBT is used interchangeably with ABA).

1

such treatments are investigative or experimental.

Also before the Court is CIGNA's motion to partially dismiss those members of the previously certified class whose claims for ABA were denied prior to November 24, 2006, on the basis that such claims are time-barred.  By separate motion, Plaintiffs ask this Court not to dismiss those class members outright, but merely to amend the class definition for the previously certified class, as well as for the subclass for which they now seek certification, to eliminate any concerns regarding the statute of limitations applicable to the instant claims, thus preserving the claims of those class members who could bring their claims in their own states with longer limitations periods.

For the following reasons, this Court will grant in part and deny in part Plaintiffs' motion to expand the class definition, deny without prejudice to reassertion CIGNA's partial motion to dismiss, and grant in part and deny in part Plaintiffs' motion to amend the class definition for the previously certified class and the newly certified subclass.

**FACTS**[3]

On January 14, 2011, Churchill filed his First Amended Complaint followed by a motion to certify this case as a class action.  On August 12, 2011, this Court certified the following class of former CIGNA plan participants:

> All individuals who, between November 24, 2004, and August 12, 2011, (1) were
> enrolled in a plan administered by a CIGNA Defendant, or insured under health

---

[3] "In deciding whether to certify a class under Federal Rule of Civil Procedure 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).  Class certification "calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.*  Such findings must be supported by factual determinations made by a preponderance of the evidence. *Id.*  Also, a court must "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.*

> insurance coverage offered by a CIGNA Defendant in connection with a plan, (2) are
> no longer enrolled in a CIGNA-affiliated plan, and (3) made a claim for Applied
> Behavior Analysis and/or Early Intensive Behavioral Treatment for Autism Spectrum
> Disorder which was denied on the grounds that such treatment is deemed by a
> CIGNA Defendant to be investigative or experimental.

August 12, 2011, Mem. and Order, ECF Nos. 70-71.

At the time, Churchill was not a current CIGNA member.  Having recognized he was therefore not a typical representative of the entire proposed class for which he sought certification, in that he sought to certify a class of both current and former CIGNA members, Churchill requested leave to amend his Complaint to add current CIGNA members as named plaintiffs.

On September 2, 2011, after a brief discovery period, Churchill filed a Second Amended Complaint adding Luis Rolando as a named Plaintiff.[4]  Rolando is a current member of an employer health plan sponsored by NetApp and administered by CIGNA.  Rolando's son, a beneficiary of Rolando's NetApp Group Welfare Plan, suffers from ASD and received ABA therapy, which was specifically covered under the NetApp Plan.  In the Second Amended Complaint, Plaintiffs allege CIGNA improperly denied insurance benefits to cover their sons' ABA treatment in violation of § 502(a)(1)(B) and (a)(3) of the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).  Rolando seeks benefits due pursuant to § 1132(a)(1)(B) and equitable relief pursuant to § 1132(a)(3).

In light of the addition of Rolando as a named plaintiff, Plaintiffs seek to expand the class definition to add the following subclass of current CIGNA plan participants:

All individuals who, on or after November 24, 2004, (1) were enrolled in a plan

---

[4] Churchill also added Parthiv Rawal as a named Plaintiff in the Second Amended Complaint, but subsequently moved to dismiss Rawal from the lawsuit, which motion was unopposed and which this Court granted.

administered by a CIGNA Defendant, or insured under health insurance coverage offered by a CIGNA Defendant in connection with a plan, (2) are currently enrolled in a CIGNA-affiliated plan, and (3) who made a claim or make a claim for Applied Behavior Analysis and/or Early Intensive Behavioral Treatment for Autism Spectrum Disorder which was denied on the grounds that such treatment is deemed by a CIGNA Defendant to be investigative or experimental.

Pls.' Mot. to Amend Class Definition 1.

As this Court detailed in its August 12, 2011, Opinion, ABA therapy, which was developed approximately 40 years ago, is "a discipline concerned with the application of behavioral science in real-world settings such as clinics or schools with the aim of addressing socially important issues such as behavior problems and learning."  ECF No. 70 at 2-3 (internal citations omitted).  While ABA therapy encompasses a broad range of techniques, certain features are common to all ABA-based treatment, including "the objective measurement of behavior, precise control of the environment, and use of procedures based on scientifically established principles of behavior."  *Id.* at 3 (internal citations omitted).  Autism or ASD is classified as a Pervasive Developmental Disorder (PDD), *see* Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 2, and ABA therapy is beneficial to children diagnosed with PDDs.  *See, e.g.*, *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1230-32 (D. Or. 2010) (citing Glen O. Sallows & Tamylnn D. Graupner, *Intensive Behavioral Treatment for Children with Autism: Four-Year Outcome and Predictors*, 110 Am. J. on Mental Retardation 417 (2005)); *Berge v. United States*, No. 10-0373, 2012 WL 3039736, at *21 (D.D.C. July 26, 2012) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 69 (4th ed., text rev. 2000)).  Indeed, many researchers support the use of ABA to treat ASD, including the American Academy of Pediatrics, which has declared ABA "the most efficacious psychosocial treatment for autism."  ECF No. 70 at 3 (internal citations omitted); *see also*

4

*McHenry*, 679 F. Supp. 2d at 1232 (citing William J. Barbaresi, et al., *Autism: A Review of the State of the Science for Pediatric Primary Health Care Clinicians*, 160 Archives of Pediatrics & Adolescent Med. 1167, 1171 (2006) (finding "[d]ecades worth of scientific research provide clear and convincing support" for ABA's use as an "effective intervention")).

Like Churchill, Rolando argues CIGNA has a standard and uniform medical coverage policy that denies coverage for ABA. With respect to ABA, the relevant portions of CIGNA's policy states:

> CIGNA does not cover intensive behavioral interventions (e.g., early intensive behavior intervention [EIBI], intensive behavior intervention [IBI], Lovaas therapy, applied behavior analysis [ABA]) for any indication because it is considered experimental, investigational or unproven.
>
> Intensive Behavioral Interventions/ABA are considered Experimental/Investigational/ Unproven and not covered regardless of the code submitted.

Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1, 11. The CIGNA Medical Coverage Policy "applies to all plans administered by CIGNA Companies"; however, it may be superceded by the policies set forth in individual plans. *Id*. at 1. By illustration, prior to July 1, 2011, Rolando's NetApp Plan contained a separate autism benefit through which it covered ABA therapy. *See* Pls.' Mot. to Amend Class Definition 6-7. Absent that separate autism benefit rider, coverage for ABA is governed by CIGNA's Medical Coverage Policy, which specifically excludes coverage for ABA therapy "for any indication," "regardless of the code submitted." *Id.* at 7-8. Rolando thus asserts CIGNA's Medical Coverage Policy does not allow for individualized assessments.

Prior to July 1, 2011, Rolando submitted insurance claims for his son's ABA which were initially denied. Although CIGNA contends his claims were denied because Rolando had exhausted his plan's $25,000 autism lifetime maximum, Rolando asserts they were denied on the basis such

therapy was "experimental" or "investigative" because in all of CIGNA's denial letters prior to July 1, 2011, CIGNA to some extent relied on the "experimental" rationale as its basis to deny coverage for ABA therapy.[5]  Then, on May 1, 2011, May 17, 2011, and again on May 25, 2011, NetApp, through CIGNA, notified Rolando that, effective July 1, 2011, it was "eliminating the separate autism benefit . . . and unfortunately, this requires removing coverage for early intervention therapies, such as ABA, as they are still considered to be experimental."  Pls.' Mot. to Amend Class Definition Exs. 6, 8, and 9 ("As you may be aware, NetApp CIGNA medical plans will no longer offer a specialized autism rider effective July 1, 2011. . . . The coverage will . . . exclude experimental treatments such as ABA therapy.").

Thereafter, on November 7, 2011, CIGNA sent to Rolando a letter notifying him of its determination of coverage for the claim Rolando submitted for his son's ABA therapy services after July 1, 2011.  Despite CIGNA's uniform policy to exclude coverage for ABA on the grounds it is experimental, and despite CIGNA's three May 2011 letters informing Rolando that all benefits for ABA therapy under his NetApp Plan would terminate as of July 1, 2011, on the basis ABA is "experimental," CIGNA advised Rolando the claim was denied on a seemingly altogether different basis, namely that such therapy was "behavioral training," an educational benefit excluded from coverage.  *See* Defs.' Mot. For Leave to Supplement the R. in Opp'n to Mot. to Amend Class Definition Ex. 18 (Nov. 7, 2011, letter); *see also* Pls.' Mot. For Leave to File Supplemental Brief in Supp. of Mot. to Amend Class Definition 1-4.  With respect to behavioral training, CIGNA's

---

[5] Through Rolando's persistence and use of the appeals process, his pre-July 1, 2011, claims were eventually all paid.

Medical Coverage Policy states:

> Many benefit plans specifically exclude behavioral training or services that are considered educational and/or training in nature.  In benefit plans where this exclusion is present, services that are considered behavioral training such as intensive behavioral interventions would not be covered. . . .
> CIGNA does not cover intensive behavioral interventions (e.g., early intensive behavior intervention [EIBI], intensive behavior intervention [IBI], Lovaas therapy, applied behavior analysis [ABA]) for any indication because it is considered experimental, investigational or unproven.

Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1.

## DISCUSSION

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quotations omitted).  Such an action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under [Federal Rule of Civil Procedure] 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701(1979)); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (indicating the class-action device should advance "the efficiency and economy of litigation which is a principal purpose of the procedure").  Class certification is proper only if, "after a rigorous analysis," the trial court is satisfied the prerequisites of Rule 23 are met.  *Falcon*, 457 U.S. at 161; *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d at 309.  A party seeking to certify a class action must meet the four requirements of Rule 23(a), which ensures the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate:  (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative party

must be typical of those of the class; and (4) the representative party must fairly and adequately protect the interests of the class.

A party who satisfies the Rule 23(a) prerequisites must then show that the putative class falls within one of the three categories set forth in Rule 23(b).  Rolando seeks certification under Rules 23(b)(2) and (b)(3).  Rule 23(b)(2) allows certification when the opposing party "has acted or refused to act on grounds that apply generally to the class," and when the putative class seeks injunctive or declaratory relief.  Fed. R. Civ. P. 23(b)(2) & advisory committee's note.  Rule 23(b)(3) allows certification when the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  Each proposed subclass must independently meet the requirements of Rule 23. *See Contawe v. Crescent Heights of Am., Inc.*, No. 04-2304, 2004 WL 2966931, at *6 (E.D. Pa. Dec. 21, 2004) (citing *Williams v. Phila. Hous. Auth.*, No. 92-7072, 1993 WL 246086 (E.D. Pa. 1993)).

First, this Court must address whether the Rule 23(a) elements are satisfied for the proposed subclass.  The first Rule 23(a) requirement, numerosity, is fulfilled when the class is sufficiently large such that "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  This Court previously noted CIGNA is the fourth largest health insurer in the United States, with more than 11 million participants, and the Centers for Disease Control and Prevention (CDC) has estimated that 1 in 110

8

children in the United States have autism.  ECF No. 70 at 5-6 (internal citations omitted).  This Court found the numerosity requirement was established for the class consisting of former CIGNA participants who made claims for ABA treatment but were denied, and CIGNA does not even contest this requirement is met with respect to the subclass of current CIGNA participants Rolando wishes to represent, essentially conceding the numerosity requirement is satisfied.  Consequently, the Court is satisfied the first prong has been met.

CIGNA contends that Plaintiffs cannot prove commonality, typicality, or adequacy with respect to Rolando.  To satisfy Rule 23(a)'s commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.  As the Supreme Court explained in *Dukes*, the key consideration in assessing commonality is not whether the class raises common claims, but whether a class action can "generate common *answers* apt to drive the resolution of the litigation."  *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

CIGNA argues Rolando cannot satisfy the commonality requirement because litigating the propriety of CIGNA's denial of medical coverage for ABA therapy as a treatment for ASD on the basis that such treatment is investigative or experimental will not resolve the issue for class participants whose claims were denied for multiple reasons, only one of which was grounded in the experimental rationale.  In essence, CIGNA argues individual issues of the potential class members prevail over common class issues.

In more than half of the nine representative CIGNA claim denial letters issued to potential class members that were submitted to this Court, CIGNA relied to some extent on the experimental or investigational exclusion to deny coverage outright for ABA therapy. *See, e.g.*, Defs.' Opp'n to Pls.' Mot. to Amend Class Definition 8-9 & Exs. 5-13 (nine claim denial letters submitted to this Court by CIGNA, of which five (Exs. 6-10) relied to some extent on the experimental language). The multiple other reasons for the claim denial provided in those five letters are all curable, and in the control of the plan participant. For example, in addition to the experimental rationale, CIGNA denied  claims for ABA therapy because the provider declined requests for peer-to-peer review, or was a non-participating provider and the particular health plan did not provide for out-of-network benefit coverage, or because of issues with the provider's license. *See id*. Exs. 7-10.  A plan participant can resolve these issues by finding a participating provider, a provider with the appropriate licensing, or a provider who will furnish concurrent clinical information from which to conduct a review.  Thus, the denial of coverage, insofar as it is based on factors other than the experimental reason, is due to the participant's selection of a provider not covered by that participant's plan.

With the exception of one claim denial letter (Ex. 5) in which the claim for ABA therapy was partially covered, it is clear none of the various ERISA plans represented in the letters submitted by CIGNA contained separate benefit riders covering such therapy. *See id*. Exs. 6-10.  Even had those participants cured the defect, the ultimate denial can be explained by CIGNA's uniform policy which "does not cover . . . ABA . . . for any indication because it is considered experimental, investigational or unproven."  Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1.

10

In the remaining denial letters, the specific experimental/investigational language was omitted altogether, but the claim for ABA therapy was nevertheless denied on the basis that intensive behavioral intervention (i.e., ABA) is excluded under the participant's plan.  *See* Defs.' Opp'n to Pls.' Mot. to Amend Class Definition Exs. 11-13.  Again, the reason for the exclusion can be traced back to CIGNA's uniform Medical Coverage Policy, which:

> does not cover intensive behavioral interventions (e.g., early intensive behavior intervention [EIBI], intensive behavior intervention [IBI], Lovaas therapy, applied behavior analysis [ABA]) for any indication because it is considered experimental, investigational or unproven.

> Intensive Behavioral Interventions/ABA are considered Experimental/Investigational/ Unproven and not covered regardless of the code submitted.

Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1, 11.

This Court is thus satisfied that the commonality requirement has been met given the plain language in CIGNA's uniform policy which denies coverage for ABA therapy on the basis such therapy is experimental.  Because the class Rolando seeks to represent is allegedly harmed by CIGNA's uniform policy, and because resolution of the class members' claims hinges on whether such a policy is proper, the commonality element is satisfied.

The next Rule 23(a) consideration is typicality, which requires that Rolando's claims be typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement is to "ensur[e] that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).  When analyzing typicality, a court

11

must compare the situation of the named plaintiff to that of the class as a whole by considering "the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *Id.* at 597-98.   To some extent, commonality and typicality overlap in that they hinge on whether the class members have similar claims.   However, commonality tests the sufficiency of the class itself by focusing on the class claims, while typicality tests the sufficiency of the proposed representative by focusing on the relation between the proposed representative and the class as a whole.  *See Hassine v. Jeffes,* 846 F.2d 169, 176 n.4 (3d Cir.1988).

Here, like the other current CIGNA plan participants Rolando seeks to represent, Rolando sought coverage for ABA therapy, but was denied pursuant to CIGNA's uniform policy which excludes coverage on the basis that such therapy is experimental.  *See, e.g.*, Pls.' Mot. to Amend Class Definition Exs. 6 (May 1, 2011, letter notifying Rolando CIGNA was "eliminating the separate autism benefit . . . and unfortunately, this requires removing coverage for early intervention therapies, such as ABA, as they are still considered to be experimental"), 8 (May 17, 2011, letter to the same effect), and 9 (May 25, 2011, letter advising, "[a]s you may be aware, NetApp CIGNA medical plans will no longer offer a specialized autism rider effective July 1, 2011. . . . The coverage will . . . exclude experimental treatments such as ABA therapy.").   CIGNA argues the fact that NetApp altered its policy by removing coverage for ABA therapy is not a claim denial.  However, the Third Circuit has established a termination of benefits is the same as a denial of benefits.  *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007) ("Notably, a *formal* denial

12

is not required if there has already been a repudiation of the benefits. . . which was *clear* and made known to the beneficiary." (internal citations omitted) (emphasis in original)); *Grossmuller v. Int'l Union, UAW, Local 813*, 715 F.2d 853, 856-59 (3d Cir. 1983) (deeming the claimant's termination of benefits under his ERISA plan as a denial of a claim for benefits for purposes of compliance with 29 U.S.C. § 1133); *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 852 (3d Cir. 2011) (treating termination of benefits the same as denial of benefits when court deemed blanket statement in benefits *termination* letter failed to provide "specific reasons" for *denial* of benefits). Consequently, beginning July 1, 2011, Rolando's ABA benefits were effectively denied on the basis such therapy was still considered experimental.

Furthermore, on November 7, 2011, CIGNA denied Rolando's post-July 1, 2011, claim for ABA therapy. *See* Defs.' Mot. for Leave to Supplement the R. in Opp'n to Mot. to Amend Class Definition Ex. 18 (Nov. 7, 2011, letter). At first blush, the reason for the claim denial appears to abandon the experimental rationale entirely, declaring instead such therapy is "behavioral training," an "educational therapy" which is excluded from coverage. However, the plain language in CIGNA's Medical Coverage Policy suggests otherwise. Specifically, CIGNA's Policy states:

> Many benefit plans specifically exclude behavioral training or services that are considered educational and/or training in nature. In benefit plans where this exclusion is present, ***services that are considered behavioral training such as intensive behavioral interventions would not be covered***. . . .
> ***CIGNA does not cover intensive behavioral interventions (e.g.,*** early intensive behavior intervention [EIBI], intensive behavior intervention [IBI], Lovaas therapy, ***applied behavior analysis [ABA]) for any indication because it is considered experimental, investigational or unproven***.

Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1 (emphasis added). Thus, behavioral training incorporates ABA therapy and, therefore, the basis for CIGNA's November 7,

13

2011, denial of Rolando's ABA claim can, in fact, be traced back to the experimental rationale.

Counsel for CIGNA admits ABA is behavioral training. Oral Arg. Tr. 31-32, Dec. 5, 2011. This is consistent with the case law. *See, e.g.*, *McHenry*, 679 F. Supp. 2d at 1241 (holding "ABA therapy . . . is behavioral training," and explaining ABA's "defining characteristic is application of techniques to modify behavior"); *Berge*, 2012 WL 3039736, at *23 (stating ABA is the "application of behavioral principles to shape behaviors and teach new skills in an individual" and explaining ABA therapy is an intervention "focus[ed] on educational and behavioral trainings") (internal quotations and citations omitted). If ABA is "behavioral training," then according to CIGNA's policy, "behavioral training" (the intensive behavioral interventions that amount to behavioral training), which includes ABA, is excluded from coverage because it is considered experimental treatment. Hence, regardless of whether CIGNA expressly employed its experimental language to deny ABA therapy in its November 7, 2011, letter to Rolando, or instead denied the therapy on the basis that it is behavioral training, CIGNA's ultimate underlying reason to exclude coverage for ABA therapy is clearly grounded in the experimental or investigative rationale.[6]

---

[6] Although Rolando asserts that "ABA therapy is a totally distinct modality from 'behavioral training,'" Pls.' Resp. In Opp'n to Defs.' Mot. for Leave to Supplement the R. 5; *see also id.* Ex. 1, at 1 (Borkenhagen Decl.) ("ABA is a distinct treatment modality, and it is not behavioral training."), and urges the Court to ignore that claim denial and "recognize it as the sham that it is," *id.* at 2, this Court does not necessarily agree. First, CIGNA's counsel concedes ABA is behavioral training, a fact of which Rolando was not previously aware as CIGNA had never before referred to Rolando's son treatment as "behavioral training." Oral Arg. Tr. 32, Dec. 5, 2011. However, given that behavioral training is broader than ABA, *see id.* at 30-32, not all behavioral training is ABA therapy. Consequently, CIGNA may in fact treat some behavioral training as a separate and distinct modality from ABA therapy as a treatment for ASD. Nevertheless, the intensive behavioral interventions, including ABA, which *are* behavioral training, are denied under CIGNA's Policy as experimental, and CIGNA effectively explained the same to Rolando in its May 1, 17, 25, and November 7, 2011, letters.

Accordingly, because the same conduct—CIGNA's denial of reimbursement for ABA therapy on the grounds it is experimental—affected other current CIGNA members, as set forth in detail above, Rolando is a typical plaintiff insofar as he seeks to represent a class of individuals who are current participants of a benefit plan administered by CIGNA and who have been harmed by CIGNA's policy to deny claims, or terminate coverage, for ABA therapy.  Typicality is thus satisfied.

As the final step under Rule 23(a), this Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This adequacy requirement has two components:  (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the entire class." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996).  The second element, which requires consideration of the competency and qualifications of class counsel to ensure counsel is capable of managing the class litigation, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 312 (3d Cir. 1998), is not challenged here as this Court has already approved class counsel.  For the first element, a court must conduct "an inquiry into potential conflicts among various members of the class . . . because the named plaintiffs' interests cannot align with those of absent class members if the interests of different class members are not themselves in alignment." *Id.* (citation omitted).

CIGNA argues Rolando is an inadequate representative because he is not a member of the class he seeks to represent in that none of his claims for ABA therapy have ever been denied on the

15

grounds that ABA is "investigative or experimental."[7]  Defs' Opp'n to Pls.' Mot. to Amended Class

Definition 18.   CIGNA argues all of Rolando's pre-July 1, 2011, claims were paid despite their

initial denials (Rolando successfully appealed those claims), and contends the claims were initially

denied because Rolando had exhausted the $25,000 lifetime cap NetApp placed on its autism benefit

rider, and not because ABA is experimental.   Thus, CIGNA argues that prior to July 1, 2011,

Rolando was never denied ABA therapy on the basis that it is experimental or investigational, but

instead had every claim for ABA therapy paid for under the terms of his NetApp Plan.   Moreover,

after July 1, 2011, CIGNA argues Rolando's claim was denied because ABA is "behavioral

training," an educational benefit excluded from coverage, and not because ABA is experimental.

"It is well settled that to be a class representative on a particular claim, the plaintiff must himself

have a cause of action on that claim."  *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d

Cir. 1987); *Contawe*, 2004 WL 2966931, at *8 ("A plaintiff cannot represent a subclass of which

he is not a member.").

     CIGNA's argument is unpersuasive.   Regardless of whether Rolando's pre-July 1, 2011,

claims were ultimately denied because of the exhaustion of his lifetime cap, or because ABA therapy

was experimental, the parties do not dispute those claims were eventually paid because of the

separate autism rider NetApp offered.   However, as set forth above, on May 1, May 17, and again

---

[7] CIGNA also argues Rolando is an inadequate representative because he is subject to unique defenses that do not apply to other members of the class he seeks to represent, one of which is Rolando's alleged inequitable conduct. Defs' Opp'n to Pls.' Mot. to Amend Class Definition 18-20. CIGNA contends Rolando threatened to sue his local school district to require it to pay for his son's ABA therapy from February, May, June, and August 2009, while he was submitting those same claims to CIGNA for reimbursement.  Claims from 2009 are not at issue here; Rolando's adequacy as a class representative concerns only the events and claims beginning in 2011 after CIGNA eliminated the autism rider. Consequently, CIGNA's alleged defense is not applicable.

on May 25, 2011, Rolando was notified the terms of his NetApp Plan would change, and all benefits for ABA therapy would terminate, effective July 1, 2011, on the basis such treatment is experimental or investigative. Although CIGNA argues NetApp may alter the benefits it provides as part of its employer-sponsored plans and, therefore, this change in its coverage is not considered a claim denial, this Circuit treats a clear termination of benefits to be the same as a denial of benefits. *See Fortis Benefits*, 475 F.3d at 520-21; *Grossmuller*, 715 F.2d at 856-59; *see also Am. Airlines,* 632 F.3d at 852. Thus, as of July 1, 2011, Rolando's ABA benefits were effectively denied on the basis such therapy was still considered experimental. In addition, as this Court has also previously explained, Rolando's post-July 1, 2011, claim for ABA benefits was in fact denied on the experimental rationale. The plain language in CIGNA's own policy makes clear that ABA, an intensive behavioral intervention, is a type of behavioral training, which CIGNA excludes from coverage on the basis it is experimental, investigational or unproven. Pls.' Reply in Supp. of Mot. to Amend Class Definition Ex. 1, at 1. This is true irrespective of whether the modality is phrased as the more general "behavioral training," or as "ABA" specifically. Consequently, Rolando is indeed a member of the class he seeks to represent and, as such, is an adequate class representative.

Having found the Rule 23(a) requirements have been met for the proposed class Rolando seeks to represent, this Court must next determine whether the proposed class satisfies one of the provisions of Rule 23(b). Like Churchill, Rolando seeks certification under two provisions, Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) allows certification when the opposing party "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Certification under Rule

17

23(b)(2) is appropriate only where the relief sought is primarily injunctive or declaratory.  *See id*. In fact, Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.  *Dukes*, 131 S. Ct. at 2557-58 (holding monetary claims for individualized relief do not satisfy the Rule).  Here, Rolando, as a current CIGNA member, seeks both injunctive and declaratory relief as well as monetary damages on behalf of potential class members for CIGNA's uniform denial of claims for ABA therapy on the basis such therapy is experimental or investigative.  Unlike Churchill, a former CIGNA member, Rolando has standing to seek injunctive and declaratory relief for such action.  However, "individualized monetary claims belong in Rule 23(b)(3)."  *Id.*  Accordingly, certification under this provision is not appropriate.

Rule 23(b)(3) allows certification where "a court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Class actions certified under Rule 23(b)(3) are subject to mandatory notice and opt-out requirements. Fed. R. Civ. P. 23(c)(2)(B).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623 (citation omitted). The predominance requirement overlaps with the commonality and typicality requirements in Rule 23(a); however, it is "far more demanding" than the commonality and typicality requirements. *Ripley v. Sunoco, Inc.*, No. 10-1194, 2012 WL 2402632, at *5 (E.D. Pa. June 26, 2012) (citing *Amchem,* 521 U.S. at 623).  This element requires an examination of "the legal or factual questions

18

that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001).

Again, CIGNA alleges individual issues predominate over common class issues because each proposed class member's claim depends on the terms of his or her plan, the type of ASD for which an ABA therapy claim is being made, and the nature of the ABA therapy received.  Distinctions in class members' CIGNA plan terms do not preclude a finding of predominance; while each member's plan may have different exclusions, it appears the "experimental" exclusion remains the ultimate basis for CIGNA's denial of ABA therapy.  The evidence submitted to this Court shows that other CIGNA plans deny claims for ABA therapy on experimental as well as other grounds, but as discussed above, the other cited grounds are all curable in nature.  While there may be differences in the type of ASD that affect proposed class members' children and the type of ABA therapy each child receives, it is clear CIGNA has determined, on a class-wide basis, that ABA is experimental therapy in all cases, denying such therapy "for any indication," "regardless of the code submitted." Consequently, it must be determined whether CIGNA's uniform policy to deny claims for ABA on the basis that it is experimental violates ERISA.  The propriety of this uniform policy—specifically, whether it violates ERISA—can be litigated in a single forum.

Lastly, a class action is the superior method for resolution of this matter for the same reasons set forth in this Court's August 12, 2011, Opinion.  ECF No. 70.  Accordingly, class certification under Rule 23(b)(3) is appropriate.

The subclass Rolando seeks to represent shall be certified pursuant to Rule 23(b)(3) with Rolando serving as class representative of those individuals who are current members of a CIGNA-administered plan, and whose claims (or benefits) for ABA therapy to treat ASD were denied (or terminated) by CIGNA on or after November 24, 2006, based on CIGNA's policy that such treatment is investigative or experimental, including claims for ABA therapy as a treatment for ASD that are considered behavioral training and are likewise denied based on CIGNA's policy that such treatment is investigative or experimental.[8]

CIGNA next asks this Court to dismiss those members of the previously certified class whose claims for ABA therapy were denied prior to November 24, 2006. CIGNA argues the applicable statute of limitations is four years and, therefore, any claims for benefits denied prior to November 24, 2006—more than four years before the original Complaint was filed—are time-barred and should be dismissed. In their separate motion on the same issue, Plaintiffs ask this Court not to dismiss those class members outright, but instead to merely amend the class definition, as well as the subclass definition for which Rolando now seeks certification, to eliminate any concerns regarding the statute of limitations applicable to the instant ERISA benefits claims, thereby preserving the claims of those class members who could still bring their claims in their home states with longer limitations periods.

As set forth above, Plaintiffs bring claims against CIGNA for unpaid benefits pursuant to

---

[8] Although Plaintiffs seek certification for claims denied on or after November 4, 2004, for the reasons set forth below in the discussion of CIGNA's motion to dismiss and Plaintiffs' counter motion on the same issue, this Court will certify the subclass in accordance with the applicable statute of limitations. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

ERISA § 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).  ERISA does not include

a specific statute of limitations for benefits claims brought pursuant to these provisions.  Rather,

courts "borrow" the statute of limitations from the state cause of action that most closely resembles

the action before the Court.  *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305-06 (3d

Cir. 2008); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992).  In *Hahnemann*, the Third

Circuit held "[t]he statutory limitation most applicable to a claim for benefits under § 1132(a)(1)(B)

is a breach of contract claim.  In Pennsylvania, a breach of contract claim has a statute of limitations

of four years."  *Lutz v. Philips Elec. N. Am. Corp.*, 347 F. App'x 773, 776 (Oct. 8, 2009) (quoting

*Hahnemann*, 514 F.3d at 305-06, and citing 42 Pa. Cons. Stat. Ann. § 5525(a)(8)).  Accordingly, the

relevant statute of limitations in this action is four years.

 The parties do not dispute the four-year limitations period.  Thus, both parties concede claims

for benefits that were denied before November 24, 2006, fail as a matter of law.  However, Plaintiffs

argue outright dismissal of class members before those members were even provided notice violates

due process.  To satisfy minimal due process requirements under the Fifth Amendment and Rule 23,

absentee class members must be given proper notice as well as an opportunity to be heard or to

withdraw from the class.  *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 167 (E.D. Pa. 2011).  Notice

must be provided to absent class members when a court certifies a class under Rule 23(b)(3).  Fed.

R. Civ. P. 23(c)(2).  The previously certified class was certified pursuant to Rule 23(b)(3).[9]  Notice

shall thus be given to the class members previously certified by this Court, and Defendants' motion

---

[9] For classes certified pursuant to Rule 23(b)(3), as was the previously certified class here, notice is
required, and must be "the best notice that is practicable under the circumstances, including
individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.
23(c)(2)(B).

to dismiss will be denied without prejudice to reassertion after such notice is provided.  Plaintiffs'

motion to amend is granted insomuch as it is consistent with this Court's ruling on their motion to

expand the class definition to include a subclass; the remainder of their motion is denied.

An appropriate order follows.


BY THE COURT:


 /s/ Juan R. Sánchez_____
Juan R. Sánchez, J.


22